UNITED STATE DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DENEANE CAMPBELL, as Personal
Representative of the ESTATE OF
K███ A███, DECEASED,

Case No.: 3:17-cv-00914 –MMH-JRK

Plaintiff,

v.

THE CITY OF JACKSONVILLE,
MIKE WILLIAMS, individually and in his
Official Capacity as Sheriff of the Consolidated
City of Jacksonville and Duval County, and
J.C. NOBLES,

Defendants.
_____/

## PLAINTTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, Deneane Campbell, as Personal Representative of the estate of K███ A███, her minor son, hereby responds to the Motion to Dismiss filed by Defendants, City of Jacksonville ("City") and Officer J.C. Nobles ("Nobles") as follows:

### FACTS ALLEGED AND PROCEDURAL BACKGROUND

For purposes of this Motion, the Court must view the Complaint in the light most favorable to the plaintiff and take all well-pleased factual allegations as true. *See Brooks v. Blue Cross & BlueShield of Fla. Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). On March 19, 2015, Officer Nobles responded in his patrol vehicle to the report of a stolen vehicle on Sycamore Street in Jacksonville, Florida. Officer Nobles reported the vehicle and waited for back-up. (Complaint paragraph 8). Officer Nobles observed two African American males approach and enter the vehicle. He drove towards the vehicle, at which time it drove past him. He activated

his sirens and lights and pursued. (Complaint - paragraph 9). After a short pursuit, the vehicle crashed and two African American males exited and fled on foot. Officer Nobles stopped his vehicle. He identified K███ A███ as carrying a weapon in his hand as he fled. Officer Nobles fired two shots. (Complaint – paragraph 10). K███ A███ continued to flee and discarded his weapon. He crouched behind a parked vehicle on the side of a home. Officer Nobles pursued on foot. K███ A███ stood, turned and began to flee again. Officer Nobles then fired two more shots, striking A███ in the back of the head. (Complaint – paragraph 11). A███ who was 16 years old, died later that day. (Complaint - paragraph 12).

Plaintiff, K███ A███ mother and Personal Representative of his estate, filed suit in state court. Plaintiff alleged negligence on the part of the The City of Jacksonville and Jacksonville Sheriff's Office(count one); deprivation of life without substantive due process by Officer Nobles pursuant to 42 U.S.C. section 1983 (Count two;) and municipal liability for deprivation of life without substantive due process pursuant to 42 U.S.C. section 1983 process (count thee).

The City removed the action to the United States District Court for the Middle District of Florida on the basis of federal question jurisdiction. The defendants' Motion to Dismiss followed.

**STANDARD OF REVIEW ON MOTION TO DISMISS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matters, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). Although this pleading standard "does not require 'detailed factual

allegations,' . . . it demands more than unadorned, the defendant –unlawfully-harmed-me accusations." *Id.* (alteration added) (quoting *Twombly*, 550 U.S. at 555).

Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added)(citing *Twombly*, 550 U.S. at 556).

## STATE LAW NEGLIGENCE CLAIMS

### PLAINTIFF'S CLAIM IS NOT BARRED BY THE STATUTE OF LIMITATIONS

The City first argues that the state law negligence claims brought against it are barred by the statute of limitations. The City contends that under F.S. section 728.28(14) the 2 year statute of limitations for wrongful death actions under Florida State section 95.11(4) is applicable. Section 728.28(6)(a)2 Requires that, in an action for wrongful death, the claimant must present the claim in writing to the Department or agency within 2 years after the claim accrues and that the failure of the agency to make final disposition of a claim within 90 days after it is filed shall be deemed a final denial. The statute further provides, however, that the statute is tolled "for the period of time taken by …the appropriate agency…<u>to deny</u> the claim." Emphasis added.

The City argues that because it did not respond at all to plaintiff's notice of claim dated January 23, 2017, the statute of limitations was tolled only until March 19, 2017 – 90 days later. The statute does not say, however, that the statute is tolled until the agency denies the claim <u>or</u>

until 90 days expires without a response. It states that it is tolled for the period of time taken <u>to deny</u> the claim. To deny is an action. It is distinct from the failure to act at all.

Florida Statute 768.28 is in derogation of the common low. Statutes in derogation of the common law are to be construed strictly. They will not be interpreted to displace the common law further than is clearly necessary. Rather, the courts will infer that such a statute was not intended to make any alteration other than was specified and plainly pronounced. A statute, therefore, designed to change the common law rule must speak in clear, unequivocal terms, for the presumption is that no change in the common law is intended unless the statute is explicit in this regard. 30 Fla.Jur. Statute, Sec. 130.

The legislature in amending section 768.28, as it relates to claims for wrongful death, could easily have stated that the limitations period was tolled until the agency denied the claim <u>or</u> the expiration of 90 days without any action. It did not. Instead, a strict reading of the statute indicates that the limitations period is tolled until such a time as the agency affirmatively denies the claim. This places the onus on the agency, if it wishes to end the tolling period, to deny the claim. The expiration of the 90 day period without such a denial permits the plaintiff to file suit but does not end the tolling.

Based on a strict construction of the statute, plaintiff's claim was timely filed.

### **THE COMPLAINT IS SUFFICIENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 8(a)(2)**

Defendant, The City of Jacksonville next contends that the complaint fails to satisfy Federal Rule of Civil Procedure 8(a)(2) because it does not give the City notice of the nature of the claims brought against it. Rule 8(a)(2) requires that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for judgment for the relief the pleader seeks." Furthermore, all averments of a claim should be

"made in numbered paragraphs, the contents of each which shall be limited as far as practicable to a statement of a single set of circumstances," and "[e]ach claim founded upon a separate transaction or occurrence . . . shall be stated in a separate count . . . whenever a separation facilitates the clear presentation of the matters set forth." Fed.R.Civ.P. 10(b). The requirements for pleading under the Federal Rules of Civil Procedure are not particularly onerous to plaintiffs. The Rules do not require a plaintiff to state every situation, condition and nuance that may be presented at trial. *Erickson v. Hunter,* 932 F.Supp. 1380, 1385 (M.D. Fla. 1996).

In the instant case the allegations of the Complaint are sufficient to satisfy the low hurdle established by the Federal Rules of Civil Procedure. The Complaint is not a "shotgun pleading" where it is "virtually impossible to ascertain which defendant committed which alleged act." *See Veltman v. Walpole Pharmacy, Inc.* 928 F.Supp. 1161, 1163-64 (M.D. Fla. 1996).

Each of three counts is separately labelled. The thorough nature of the defendants' own Motion illustrates that the allegations are clearly sufficient to place the defendants on notice of the nature of the claims being brought against them. The fact that counts II and III incorporate the factual allegations of Count I by reference is not prohibited by the rule and does not prevent the defendant from understanding the nature of the claims asserted in each count. For these reasons, the Defendants' Motions to Dismiss the Complaint based on Federal Rules of Civil Procedure 8(a) and 10(b) are denied.

### THE ALLEGATONS OF COUNT I ARE SUFFICIENT TO STATE A CAUSE OF ACTION UNDER FLORIDA LAW

Defendant, The City of Jacksonville further argues that none of plaintiff's allegations in Count I present a viable negligence claim under Florida law. Defendant, The City of Jacksonville argues first that no cause of action exists in Florida for negligent use of excessive force. Contrary to this assertion, the Florida Supreme Court has laid this issue to rest in *Rodriquez v. Miami-Dade County*, 117 So.3d 400 (Fla. 2013), in which it found that a police department could

potentially be held liable in conjunction with the plaintiff's shooting by one of its officers "...if the police created or substantially contributed to the shooting through negligent acts." *Rodriguez* at 402. See also, *Lewis v. City of St. Petersburg,* 260 F.3d 1260, 1263 (11th Cir. 2001), wherein the 11th Circuit allowed "a separate negligence claim based upon a distinct act of negligence to be brought...in conjunction with a claim for excessive force."

Defendant, The City of Jacksonville next contends that plaintiff improperly attempts to plead a claim for negligence by alleging that Officer Nobles failed to follow JSO policies. Defendant, The City of Jacksonville contends that such policies do not create an independent duty of care. Plaintiff has not alleged, however, that the defendants' duties arise from these policies. Rather, their violation is cited in paragraph 16 as evidence of a failure to use reasonable care. Under Florida law, the violation of these policies may be evidence of a standard of care. See *Steinberg v. Lomenick,* 531 So.2d 199 (Fla. 3d DCA 1988), rev. denied, 539 So.2d 476 (Fla.1989)( finding that a party's own rules made to govern the conduct of employees are relevant evidence of the standard of care but the jury receiving such evidence must be cautioned that the existence of an internal rule does not itself fix the standard of care ).

Defendant, The City of Jacksonville next argues that plaintiff cannot pursue an active negligence claim for failure to train. While a municipality generally cannot be held directly responsible for the actions of its agents under a theory of *respondent superior, see Monell v. Dept. of Soc. Serv. of the City of New York,* 436 U.S. 658, 98 S. Ct. 2018 (1978), governmental entities may be held liable under section 1983 when a governmental "policy or custom" is the "moving force" behind the constitutional deprivation. *Graham,* 473 U.S. at 166; *Monell,* 436 U.S. at 694. Under certain circumstances, a police department's failure to adequately train its officers may constitute a "policy" giving rise to governmental liability. *See Canton v. Harris,*

489 U.S. 378, 109 S. Ct. 1197 (1989) (inadequacy of police training regarding administration of medical care to person in police custody may serve as basis of section 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact).

In the instant case, taking the allegations of the Complaint as true and construing them in the light most favorable to Plaintiff, the Plaintiff has sufficiently alleged that the death of K███ A███ were a result of a "policy or custom," or lack of such policy, of Defendants. Plaintiff has alleged that Fourth and Fourteenth Amendment rights were violated by the police officer employed by Defendant, The City of Jacksonville and that he was acting under color of law, pursuant to an official custom or policy. Such allegations are sufficient to state a claim against a municipality for a violation of section 1983. *See Farred v. Hicks,* 915 F.2d 1530, 1533 (11th Cir. 1990) (holding complaint which stated solely that a city police department failed to effectively train an officer not to unlawfully detain a person without probable cause was sufficient to survive a 12(b)(6) motion). Plaintiff has also explicitly alleged that the City failed to follow its early warning protocol which, if it had been followed, would have resulted in additional evaluation and training of Officer Nobles and made the death of K███ A███ less likely to have occurred. Complaint – paragraph 16(h). These allegations, taken in the light most favorable to plaintiff, state a cause of action for negligent supervision as the whole purpose of the early warning protocol is supervision which allows the City to correct training deficiencies and make incidents like this one less likely to occur.

## PLAINTIFF'S 1983 CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

Defendant, The City of Jacksonville argues that Counts II and II are barred by the expiration of the Florida 2 year statute of limitations. This is not, however, the applicable statute

of limitations. Because section 1983 does not have its own statute of limitations, it is "deficient" within the meaning of 42 U.S.C. section 1988. Under the provisions of that statute, where federal law is deficient, federal courts are to apply the relevant law of the forum state, unless the relevant law of the forum state is inconsistent with federal law or policy or discriminates against federal claims.

As a consequence of section 1988, statutes of limitations issues arising in section 1983 cases constitute an unusual amalgam of federal and state law regarding the choice of the proper limitations period, accrual and tolling. The leading case is *Wilson v. Garcia*, 471 U.S. 261 (1985), which held that *the forum state's personal injury statute of limitations governs*. This means that there is no national uniformity. If the forum state has more than one possibly applicable personal injury statute of limitations, then the state's residual or general statute of limitations governs. *Owens v. Okure*, 488 U.S. 235 (1989).

The four-year statute of limitations for personal injuries has been held to apply to section 1983 claims arising in Florida. *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003). This was held to be the case even where Florida law otherwise provided for a one year statute of limitation. *Ellison v. Lester* 275 Fed. Appx 900,901 (11th Cir. 2008) (holding that Florida's 4 year statute of limitations applied to 1983 claim brought by prisoner even though Florida Statute provided for one year statute of limitations for actions brought by or on behalf of a prisoner). This holding directly contradicts the City's argument that Florida's two year statute of limitation for wrongful death should apply rather than the four year limitation period for personal injuries. Defendant, City of Jacksonville has cited no authority for its contention.

## PLAINTIFF HAS PROPERLY PLED UNDER THE FOURTH AND FOURTEENTH AMENDMENTS

Defendant, City of Jacksonville also argues that the Plaintiffs' Section 1983 claims should be dismissed because they state a claim under both the Fourth and Fourteenth Amendments to the United States Constitution, and that Plaintiffs' claims can only be "properly evaluated" under the Fourth Amendment. Such claim by Plaintiffs, however, falls easily within the liberal alternative pleading requirements allowed by Federal Rule of Civil Procedure 8. Therefore, Defendant's contention that at this stage, Plaintiffs' claims of a Fourteenth Amendment violation must be dismissed with prejudice should also be denied.

## THE ALLEGATIONS OF THE COMPLAINT ARE SUFFICIENT TO DENY NOBLES QUALIFIED IMMUNITY AT THIS STAGE OF THE PROCEEDINGS

While the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be, as it was in this case, raised and considered on a Motion to Dismiss. See *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir.2001). The Motion to Dismiss will be granted if the "Complaint fails to allege the violation of a clearly established constitutional right." *Id.* (citing *Williams v. Ala. State Univ.*, 102 F.3d 1179, 1182 (11th Cir.1997)). Whether the complaint alleges such a violation is a question of law that is reviewed de novo, accepting the facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff's favor. *Id.* The scope of the review must be limited to the four corners of the Complaint. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). While there may be a dispute as to whether the alleged facts are the actual facts, in reviewing the grant of a motion to dismiss, the court is required to accept the allegations in the complaint as true. See *Wilson v. Strong*, 156 F.3d 1131, 1132 (11th Cir.1998). Once an officer has raised the defense of qualified immunity, the burden of persuasion on that issue is on the plaintiff. See, e.g., *Suissa v. Fulton County*, 74 F.3d 266, 269 (11th Cir.1996).

Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *VInyard c. Wilson* 311 F.3d 1340, 1346 (11th Cir. 2002). The purpose of qualified immunity is to allow governmental officials to carry out their discretionary duties without the fear of personal liability or harassing litigation. *Durruthy v. Pastor* 351 F.3d 1080, 1087 (11th Cir 2003). Qualified immunity does not protect an official who knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff. *Bussey-Morice v. Gomez*, 587 F. App'x 621, 626 (11th Cir. 2014).

To obtain qualified immunity, a public official must first show that he was engaged in a discretionary duty when the allegedly wrongful act occurred. *Dalrymple v. Reno*, 334 F.3d 991, 995 (11th Cir. 2003). This is not in dispute in the instant action. Plaintiff must, therefore, "show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). This requires showing both that defendant violated a constitutional right and that the constitutional right was clearly established at the time.

Although suspects have a right to be free from force that is excessive, they are not protected against a use of force that is necessary in the situation at hand. *Jean Baptiste v. Gutierrez* 627 F.3d 816, 821 (11th Cir 2010). When an excessive force claim arises in the context of an arrest or investigatory stop of a free citizen by a police officer, it is most properly characterized as one involving the protections of the fourth amendment which guarantees citizens the right to be secure in their persons…against unreasonable …seizures of the person." *Graham v. Connor* 490 Us 386, 394 (1989). Thus excessive force claims are properly analyzed under the fourth amendments' objective reasonableness test" Graham 490 US at 388

"Determining whether the force used to effect a particular seizure is reasonable under the fourth amendment requires a careful balancing of the nature and quality of the intrusion on the individuals fourth amendment interests against the countervailing governmental interests at stake."*Graham* 490 US at 396. "…its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. No precise test or rigid preconditions exist for determining whether an officer's use of force is excessive. See *Scott* 550 US at 394-95.

The court looks "at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balances the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate. *McCullough* 559 F.3d at 1206 citing *Scott* 550 us at 383.).

The question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them without regard to their underlying intent of motivation.

### THE COMPLAINT ALLEGES A CONSTITUTIONAL VIOLATION

Plaintiff has alleged that while Officer Nobles did identify a weapon in K█████ hand when he first fled from the stopped vehicle, K█████ A█████ discarded the weapon as he fled and was not armed when the fatal shots were fired some minutes later. Plaintiff has also alleged that K█████ A█████ was shot in the back of his head after turning to flee again, indicating that he was not facing Nobles and could not be presenting him with any threat. Plaintiff has also alleged that K█████ A█████ was a minor (16 years of age) and that the crime Officer Nobles was pursing him for centered around Officer Nobles identification of a stolen vehicle.

While Defendant' The City of Jacksonville argues that the Complaint alleges Officer Nobles was lawfully pursuing an armed fleeing felon, it ignores the allegations that the weapon had been discarded, that K▮▮▮ A▮▮▮ was a minor, and that he was shot in the back of the head after turning to flee, indicating he could not have been making a direct threat to Officer Nobles at the time. All of the allegations of the complaint must be taken as true for purposes of this motion.

In *Tennessee v. Garner*, 471 U.S. 1,, 105 S.Ct. 1694, 85 L. Ed. 2d 1 (1985) the court addressed the use of deadly force on fleeing felons. The court stated:

> Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so…but where the officer has probable cause to believe the suspect poses a threat of serious physical harm, either to The officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force.

*Id*. At 11-12. 105 S.Ct. 1694). The Supreme Court held that the police officer in *Garner* violated the Fourth Amendment when he shot a young, unarmed, suspected burglar because the officer did not have reason to believe the suspect posed any physical danger to himself or others. *Id*. At 3-4, 20-21, 105 S.Ct. 1694.

In *Hernandez v. City of Miami,* 302 F.Supp. 2d 1373 (S.D. Fla. 2004) the court applied the holding in *Garner* in denying summary judgment in a case involving a Fourth Amendment claim for excessive force arising from the shooting of the plaintiff by a police officer. The officer, who was in his patrol car, had stopped the plaintiff who was acting suspiciously while walking down the street and "fumbling" with his waistband. The plaintiff had approached the police car, lifted up his shirt, and taken a gun that was hidden in his waistband and dropped it

into the open front passenger window. He then turned and ran. The officer discharged his weapon shooting the plaintiff in the back.

The Court found that the plaintiff was an armed felony suspect who had dropped his weapon and run away before being shot, unarmed, in the back, while fleeing. The court ruled that those facts could allow a reasonable jury to find a Fourth Amendment violation. *Hernandez* at 1376. The court found that just because the plaintiff had arguably brandished a weapon and committed an aggravated assault prior to being shot, did not mean that the shooting was constitutionally reasonable as a matter of law. *Id.* at 1377. The Court cited to the following similar decisions: *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1496 & n.1, 1502 (11th Cir. 1985) (en banc)(affirming judgment in favor of representative of decedent who was shot and killed by officer in the course of arrest, and finding Fourth Amendment violation under *Garner*, even though decedent (1) had reportedly pulled a gun on another driver earlier in an traffic altercation, (2) had already tried to escape from police twice after being detained and (3) had grabbed for an officer's gun while trying to break free for a third time (with the gun falling to the ground) because decedent did not have a weapon at time of shooting and posed no danger, and because officers had struck decedent before he grabbed for gun); see also *Acoff v. Abston*, 762 F.2d 1543, 1545, 1547-48 (11th Cir. 1985)(reversing directed verdict against plaintiff, a burglary suspect who had been shot in the chest while fleeing and holding some objects in his hands, because officer did not give any warning and because jury could have disbelieved officer's testimony that he had heard earlier shot and thought the plaintiff might have shot his partner); *Pruitt v. City of Montgomery*, 771 F.2d 1475, 1477-1484 (11th Cir. 1985)(affirming jury verdict in favor of plaintiff, a suspect in burglary who had been shot after he refused to obey orders to halt, as there was no evidence that plaintiff posed any physical threat to officer or others, or that plaintiff had

committed a crime involving the infliction or threatened infliction of serious physical harm); *Lumdgren v. Mcdaniel,* 814 F.2d 600, 602-03 (11th Circ. 1987) affirming verdict in favor of plaintiff, a burglary suspect found inside a video store at night, who was shot by officers where evidence in light most favorable to verdict showed that plaintiff did not reach for a weapon, did not threaten officers, and did not shoot at officers)

In *Turk v. Bergman* (11 Cir 2017) the court reversed a summary judgment in favor of the defendant city and officer and found the existence of issues of fact as to a constitutional violation where the suicidal plaintiff was shot in his vehicle and was holding a gun in his lap when confronted by police but had made no threatening moves towards them. The Court found that a jury could believe that the plaintiff did not threaten the officers and the officers shot without provocation, *Turk* citing to *Mercado v. City of Orlando,* 407 F.3d 1152, 1154, 1158 (11th Cir. 2005) (finding a Fourth Amendment violation when a person attempting suicide and holding a knife ignored two commands to drop the knife but made no threatening moves). See *Lundgren v. McDaniel,* 814 F.2d 600, 603 (11th Cir. 1987) (finding that a jury could have reasonably believed the officers were never threatened by a weapon and acted without provocation when whether "the decedent stood up behind the desk, threatened the officers with a weapon, or fired a shot, were sharply contested").

In all of the above cases, a main factor considered by the courts in denying motions, was whether the plaintiffs actually posed a threat to the officers at the time they were shot. In the instant case, plaintiff has alleged that K▆▆▆ A▆▆▆ had discarded his weapon and made no threatening move towards Officer Noble when the shooting occurred, instead turning away from him to flee.

Furthermore, a consideration of the factors outlines in the *Graham* case also weigh in Plaintiff's favor. First, there is no indication that K████ A████ posed an immediate threat to Nobles or anyone else – he had discarded his gun and turned to flee. While that fact is disputed, it must be taken as true for purposes of this motion. Second, no crime involving the infliction or attempted infliction of serious physical harm had occurred. K████ A████ was seen fleeing from a possibly stolen vehicle. There is no allegation of fact that he had committed, or threatened, any violent crime. Third, there is no indication Nobles tried to warn K████ A████ before employing lethal force.

These allegations, taken in the light most favorable to plaintiff, support an inference that Nobles shot an unarmed, minor suspect in a property crime, who was not facing him and, therefore, could not be threatening him at the moment the fatal shots were fired. Construing these facts in favor of the plaintiff it cannot be said that shooting K████ A████ in the back of the head in these circumstances was "objectively reasonable".

## THE LAW WAS CLEARLY ESTABLISHED

The shooting in the back of the head of an unarmed minor, fleeing in the opposite direction, can be said, taking the evidence in the light most favorable to plaintiff, to be such that a reasonable officer would know the actions are unlawful. A reasonable jury could therefore find that Nobles' use of deadly force violated K████ Fourth Amendment rights. This right must however, have been clearly established at the time of the shooting. A right is not clearly established unless its contours are sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. *Ashcroft v. Al-Kidd*, 563 So.2d 731, 741 (2011). The law is clearly established where there is materially similar precedent from the Supreme Court, the Eleventh Circuit, or the highest state court in which the case arose.

*Terrell v. Smith*, 668 F.3d 1244, 1256 (11th Cir 2012); but judicial precedent with material similar facts is not essential… " *Youmans v. Gagmon*, 626 F.3d 557, 563 (11th cir 2010)  A case directly on point is not required. *Ashcroft* at 741.

The cases cited above, particularly *Turk, Acoff., Pruitt and Lumdgren*, are all sufficiently similar to have provided Nobles with notice that the alleged conduct violated a constitutional right.  These cases are not directly on point, nor must they be.  Nonetheless, they support argument that shooting in the back of the heard of an unarmed, minor, suspect accused of a property crime, who was not a direct threat, violates a constitutional right.

### COUNT III STATES A CAUSE OF ACTON AS TO MUNICIPAL POLICY

Defendant, The City of Jacksonville also contends that the complaint does not allege any municipal custom, policy or practice that existed and caused any violation of K███████ constitutional rights. Plaintiff has alleged violations of specific General Orders of the Jacksonville Sheriff's Office (Deadly force policy and firearms policy), and the failure of the City to follow its early warning protocol with regard to Nobles, who had multiple prior excessive force incidents.  The complaint further alleges a failure to act by the City in light of the documented history of shootings of unarmed African American male suspects by the Jacksonville Sheriff's Office.  These allegations, in conjunction with the factual allegations that Nobles shot an unarmed minor suspect in the back of the head, are sufficient, at this stage of the pleadings, to show that an official custom or policy was the moving force behind the violation of K████ constitutional rights.

### CONCLUSION

Based on the foregoing, plaintiff respectfully requests the Court enter an Order denying the Defendants' Motion to Dismiss for the reasons given.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 4th day of October, 2017, I electronically filed the foregoing with the Clerk of the Court for using the CM/ECF system. I further certify that I served a copy of the foregoing by electronic mail to: Defendant's counsel, OFFICE OF GENERAL COUNSEL: SEAN A. GRANAT, DEPUTY GENERAL COUNSEL Office of General Counsel, 117 West Duval Street, Suite 480, Jacksonville, Florida 32202, sgranat@coj.net and further certify that I mailed and served the foregoing documents and the notice of electronic filing by first-class to the following non-CM/ECF participants as follows: N/A

NICHOLS & PINA, LLLP

BY: /s/ THEODORE S. PINA,

THEODORE S. PINA, JR.
FL Bar No.: 0095192
300 West Adams Street, Suite 130
Jacksonville, Florida 32202
(904) 353-3300 (P) (904) 353-3315 (F)
Attorney for Plaintiff
ted@nicholsandpina.com