# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

DENEANE CAMPBELL, as Personal
Representative of the Estate of K.A.,
Deceased,

     Plaintiff,

v.                                    Case No.   3:17-cv-914-J-34JRK

THE CITY OF JACKSONVILLE, et al.,

     Defendants.

---

## O R D E R

**THIS CAUSE** is before the Court on the Defendants' Motion to Dismiss, filed by the City of Jacksonville, Mike Williams, individually and in his Official Capacity as Sheriff of the Consolidated City of Jacksonville and Duval County, and J.C. Nobles, (Doc. 5, Motion), on August 25, 2017. In the Motion, Defendants request that the Court dismiss plaintiff Deneane Campbell's Complaint, (Doc. 2, Complaint), which she filed in state court July 12, 2017.[1] Deneane Campbell, who files this action as the Personal Representative of the Estate of her deceased minor son, K.A., opposes the Motion. See Plaintiff's Response to Defendants' Motion to Dismiss and Incorporated Memorandum of Law (Doc. 11, Response), filed October 4, 2017. Accordingly, this matter is ripe for review.

---

[1] On August 19, 2017, Defendant, the City of Jacksonville, with the consent of all Defendants, removed the action to this Court. See Notice of Removal (Doc. 1).

## I.    Standard of Review

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true.   See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002).   In addition, all reasonable inferences should be drawn in favor of the plaintiff.   See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010).    Nonetheless, the plaintiff must still meet some minimal pleading requirements.   Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted).   Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).   Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face."   Twombly, 550 U.S. at 570.   "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).   A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"   Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted).   Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not

entitled to [an] assumption of truth." <u>See</u> <u>Iqbal</u>, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at 570).

## II. Background[2]

This action arises out of an encounter between defendant Officer J.C. Nobles ("Nobles") and K.A., in which Nobles shot K.A., resulting in his death.

In the early afternoon of March 19, 2015, Nobles responded to a report of a stolen vehicle in Jacksonville, Florida. Complaint at ¶ 8. Nobles identified the stolen vehicle and waited for additional officers to arrive at the scene to set up a tactical plan. <u>Id.</u> While he was waiting, Nobles noticed two males approach the vehicle, enter it, and drive away. <u>Id.</u> at ¶ 9. One of these males was K.A., who was sixteen years old at the time. <u>Id.</u> at ¶ 4. Nobles followed the vehicle with his siren and lights activated. After a short pursuit, the vehicle crashed into bushes, and the two men in the car fled on foot. At the same time, Nobles "exited his patrol vehicle, and drew his weapon." <u>Id.</u> at ¶ 10. He determined that K.A. had a weapon in his hands, fired two shots at K.A., and pursued him on foot. <u>Id.</u> K.A. then discarded the weapon he was carrying, fled a short distance, and crouched behind a vehicle. <u>Id.</u> at ¶ 11. Nobles continued his pursuit. As Nobles approached him, K.A. "stood and turned to flee at which time . . . Nobles [] fired two shots, striking . . . K.A. in the back of the head." <u>Id.</u> K.A. died from his wounds. <u>Id.</u> at ¶ 12.

---

[2] In considering a motion to dismiss, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. <u>Miljkovic v. Shafritz and Dinkin, P.A.</u>, 791 F.3d 1291, 1297 (11th Cir. 2015) (quotations and citations omitted). As such, the recited facts are drawn from the Complaint and may differ from those that ultimately can be proved.

At the time of these events, Nobles was "an officer acting within the course and scope of his employment by the Jacksonville Sheriff's Office and the City of Jacksonville." Id. at ¶ 7. Likewise, Defendant Mike Williams ("Williams") was "the duly elected Sheriff of Jacksonville, Duval County, Florida." Id. at ¶ 6. In this position, Williams "was responsible for the supervision, training, instruction, control, discipline and conduct of the employees and agents of the Jacksonville Sheriff's Office [(JSO)], an agency of the City of Jacksonville," id., including Nobles. As such, "Nobles acted in conformance with the policies of . . . [Sheriff] Williams." Id. at ¶ 7.

Deneane Campbell ("Campbell"), K.A.'s mother, and the Personal Representative of the Estate of K.A., brings this action against the City of Jacksonville ("City"), Williams, and Nobles. In Count I, she asserts a Florida state law claim of negligent wrongful death against the City of Jacksonville. Id. at 4-6. In support of this claim, she asserts that the City, by and through its "law enforcement officers, agents and employees," breached its duty of care in the "exercise of the use of deadly force in the pursuit" of fleeing suspects. Id. at ¶ 16. More particularly, she asserts that the City's negligence is evidenced by Nobles' failure to follow the City's Deadly Force and Firearms policies, id. at ¶ 16.a., coupled with the City's failure to train, supervise and discipline Nobles for his past alleged use of excessive and deadly force, id. at ¶ 16.e-h, and the City's failure to take appropriate corrective measures to prevent other unjustified shootings "in light of the documented history within the Jacksonville Sheriff's office of such" events. Id. at ¶ 16.i.

In Count II, Campbell asserts that Nobles is liable under 42 U.S.C. § 1983 for depriving K.A. of his life without substantive due process of law under the Fourth and Fourteenth Amendments. Id. at ¶¶ 18-22. In Count III, she brings a § 1983 claim of

municipal liability against the City and Williams, asserting that Williams "through his agents and employees, acting within their authority and under color of state law, instituted customs, practices, and/or policies . . . that directly deprived . . . K.A. of his life and liberty without due process of law . . . as a violation of the Fourth and Fourteenth Amendments." Id. at ¶ 24.[3] Within this claim, Campbell asserts that Williams failed to adequately discipline his officers in the use of deadly force; failed to adequately train his officers in regard to the effective use of force, especially in the context of pursuing fleeing and unarmed African-American male suspects; and ratified his officers' excessive force decisions and actions, thereby creating a custom, policy, and practice of the use of excessive force. Id. at ¶¶ 25, 27. Additionally, as part of Count III Campbell asserts that Nobles, in the context of his encounter with K.A., was a final policy maker for Williams, in that Nobles' "decisions were not immediately or effectively reviewable." Id. at ¶ 26. Campbell seeks a jury trial, compensatory damages, punitive damages, and attorney's fees and costs.[4]

---

[3] At the outset, Defendants note that Campbell sues Williams, in part, "in his capacity as the 'duly elected' Sheriff of Jacksonville, Duval County, Florida," while also naming the "City of Jacksonville" as a defendant. Motion at 1, n.1. A suit against an individual in his official capacity is "to be treated as a suit against the entity" the individual represents. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); Yeldell v. Cooper Green Hosp., Inc., 956 F.2d 1056, 1060 (11th Cir. 1992). Here, Sheriff Williams represents the City of Jacksonville, and therefore, these two defendants are one and the same. Hence, the Court will refer to both interchangeably, as context requires.

The Court also notes that in the caption of her Complaint, along with listing Williams as a defendant in his official capacity, Campbell also lists Williams in his individual capacity. Complaint at 1. However, Count III of Campbell's Complaint is titled "Municipal Liability for Deprivation of Life without Substantive Due Process." Id. at 7. There, Campbell re-alleges and incorporates earlier portions of her Complaint, where she addresses the City's actions. See id. at ¶ 23 (incorporating ¶¶ 1-16, 16.e-i). More importantly, in the specific paragraphs associated with Count III, she alleges facts which she contends show that Williams instituted customs, policies, and practices which should be attributed to the City. Id. at ¶¶ 24-29. Campbell does not, however, set forth any factual allegations suggesting how Williams would be individually liable for K.A.'s death. Accordingly, the Court concludes that it was Campbell's intent to name Williams solely in his official capacity and will analyze Count III of the Complaint and the parties' arguments accordingly.

[4] The Court notes that Campbell initially filed her action in state court. Defendants removed the action to this Court. Doc. 10 (Notice of Removal) filed August 9, 2017. In doing so, Defendants asserted that the Court has jurisdiction over the matter pursuant to 28 U.S.C. 1331 (federal question jurisdiction) and 28 U.S.C. § 1441 (removal of civil actions). Doc. 1 at ¶ 3. The Court agreed. See Doc. 3 (Jurisdictional Notice),

### III.    Arguments of the Parties

Defendants seek to dismiss all three counts in Campbell's Complaint. As to Campbell's Count I negligence claim, Defendants assert that the claim is barred by the state statute of limitations. Motion at 3-5. Defendants further assert that Count I should be dismissed because it constitutes a "shotgun pleading," in that it "presents multiple state claims interwoven in a haphazard fashion." Id. at 5-6 (internal quotations and citations omitted). In parsing through the potential claims subsumed within Count I, Defendants contend that Nobles' failure to follow city policies is not sufficient to state a claim of negligence, id. at 6; there is no such claim under Florida law for the negligent use of excessive or deadly force, id. at 7-8; and that as a matter of law, Campbell cannot bring a claim of negligent training and supervision against the City. Id. at 8-11.

In addressing Campbell's federal claims against Nobles and Williams for the unconstitutional deprivation of K.A.'s life, Defendants assert that both claims are barred by the relevant statute of limitations for § 1983 claims. Id. at 11-12. Additionally, Defendants contend that to the extent Campbell denominates Counts II and III as presenting substantive due process violations under the Fourteenth Amendment, those counts must be dismissed based on the facts alleged. Id. at 12. Defendants alternatively argue that Counts II and III are due to be dismissed because Campbell fails to sufficiently allege a constitutional violation as to either Nobles' actions or those of the City. Id. at 13-15, 18-21. Finally, Defendants assert that Nobles is entitled to qualified immunity. Id. at 15-18.

---

filed August 14, 2017.  The Court has jurisdiction over Campbell's two § 1983 claims (Counts II and III) pursuant to federal question jurisdiction, 28 U.S.C. § 1331, and exercises supplemental jurisdiction over her state law negligence claim (Count I).  See 28 U.S.C. § 1367(a); United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).

In response, Campbell asserts that Count I is not barred by the state statute of limitations. Response at 3-4. She further counters that the Complaint is not a "shotgun pleading," id. at 4-5, and that the allegations in Count I are sufficient to state a claim under Florida law. Id. at 5-7. Similarly, as to Counts II and III, Campbell contends that neither claim is barred by the appropriate limitations period for § 1983 claims, and both are sufficiently pled under either the Fourteenth or Fourth Amendments. Id. at 7-9. Specifically addressing Count II against Nobles, Campbell proffers that Nobles should not be afforded qualified immunity as the Complaint sufficiently alleges a constitutional violation the contours of which were clearly established at the time of the events giving rise to the claim. Id. at 9-16. Finally, Campbell contends that as to Count III against the City and Williams, the Complaint sufficiently alleges the existence of unconstitutional city policies, customs and practices. Id. at 16.

## IV. Discussion

### a. Count I – Negligence Claim Against the City

In Count I, Campbell asserts that the City "through its law enforcement officers, agents, and employees," failed to use reasonable care in any number of instances associated with the City's implementation of, and responses to, deadly force used by its officers. Complaint at ¶¶ 16-17. In the Motion, Defendants argue that the applicable limitations period for Campbell's negligence claims against the City has expired, and therefore the claim should be dismissed as untimely. Motion at 3-5.

The statute of limitations for Campbell's negligence claim against the City for K.A.'s death is determined under Florida Statutes section § 768.28, which requires that a wrongful death claim brought "against the state or one of its agencies or subdivisions for

damages" be brought within two years of the accrual of the action.[5]  See Cone v. Orosa, No. 13-cv-24674-JLK, 2014 WL 1383028, *3 (S.D. Fla. April 8, 2014) (noting two year statute of limitations for wrongful death claims against a municipality).  Under Florida law, a cause of action for wrongful death accrues on the date of the death.  Fulton County Adm'r v. Sullivan, 753 So.2d 549, 552 (Fla. 1999).  However, a party cannot bring a wrongful death claim against a municipality until the claimant first presents "the claim in writing to the appropriate agency" and the "agency denies the claim in writing."  FLA. STAT. ANN. § 768.28(6)(a).  During the period between the claimant's presentation of the claim and the agency's denial of it, the limitations period is tolled.  Id. at § 768.28(6)(d).  Florida law further provides that "the failure of the . . . appropriate agency to make a final disposition of the claim within 90 days after it is filed shall be deemed a final denial of the claim."  Id.  See also Skyles v. McCoy, No. 6:16-cv-1968-Orl-37TBS, 2017 WL 1322071, *2-3 (M.D. Fla. April 7, 2017) (statute of limitations is tolled for period of time taken by agency to deny claim, or ninety days if agency fails to make a final disposition of the claim); Cone, 2014 WL 1383028 at *3 (same).  Therefore, Campbell had two years from the date of K.A.'s death to file her wrongful death action against the City.  However, during the period in which she presented her claim to the City pursuant to Florida Statute section 768.28(6)(a), the limitations period paused, but would start again upon the City's written denial of her claim, or in the absence of a written denial, ninety days after her submitting notice to the City.

---

[5] Section 768.28 provides that "an action for damages arising from . . . wrongful death must be commenced within the limitations for such actions in s. 95.11(4)."  FLA. STAT. ANN. § 768.28(14).  Section 95.11(4) of the Florida code guides that an action for wrongful death must be brought within two years.  FLA. STAT. ANN. § 95.11(4).  Additionally, section 768.28(2) directs that "'state agencies or subdivisions' include . . . counties and municipalities."  FLA. STAT. ANN. § 768.28(2).

Here, K.A. died on Sunday, March 19, 2015, and as such without tolling the two-year limitations period would end on Monday, March 20, 2017.[6]  On January 23, 2017, Campbell presented her notice of claim to the City pursuant to Florida Statutes section 768.28(6)(a), Complaint at ¶ 2, which temporarily stopped the running of the limitations period.  The City, however, did not provide Campbell with a written denial of her claim.  As a result, the limitations period began to run again on April 24, 2017, ninety days after Campbell presented her claim to the City.  Therefore, the limitations period on K.A.'s wrongful death claim expired on June 19, 2017.

In asserting that her negligence claim against the City is not untimely, Campbell misreads section 768.28(6)(d) and overlooks case law interpreting that provision. Campbell reads the language which states that the "statute of limitations for . . . wrongful death actions is tolled for the period of time taken by the . . . appropriate agency to deny the claim," FLA. STAT. ANN. § 768.28(6)(d), to suggest that unless and until the City affirmatively denies the claim, the limitations period remains tolled.  Response at 3-4. She argues that the language "to deny the claim," indicates that there must be some action by the agency before the limitations period resumes.  Id. at 4.  Additionally, she contends that to the extent section 768.28 sought to deviate from common law sovereign immunity standards by imposing liability on state and municipal entities, such statutes must be construed strictly.  Id.  As such, she asserts that

> [t]he legislature in amending section 768.28, as it relates to claims for wrongful death, could easily have stated that the limitations period was tolled until the agency denied the claim or the expiration of 90 days without any action.  Instead, a strict reading of the statute indicates that the

---

[6] The two year period actually would have ended on March 19, 2017, but that date falls on a Sunday. Florida Rule of Judicial Administration 2.514(a)(1)(C) directs that if the last day of the limitations period is a "Saturday, Sunday, or legal holiday . . . the period continues to run until the next day that is not a Saturday, Sunday, or legal holiday."  FLA. R. OF JUD. ADMIN. 2.514(a)(1)(C).

> limitations period is tolled until such time as the agency affirmatively denies the claim.   This places the onus on the agency, if it wishes to end the tolling period, to deny the claim.   The expiration of the 90 day period without such a denial permits the plaintiff to file suit but does not end the tolling.
>
> Based on a strict construction of the statute, plaintiff's claim was timely filed.

Id. (emphasis in original).   However, in making this argument, Campbell overlooks the statute's explicit language providing that "the failure of the . . . appropriate agency to make a final disposition of a claim within 90 days after it is filed shall be deemed a final denial of the claim."   FLA. STAT. ANN. § 768.28(6)(d).   This language is followed by the language which directs that "[t]he statute of limitations for . . . wrongful death actions is tolled for the period of time taken by the . . . appropriate agency to deny the claim."   Id. (emphasis added).   Taken together, these two sentences dictate that the limitations period is tolled for the period of time that the agency takes to deny the claim, and if the agency takes no such action within ninety days, the claim will be deemed denied.   Case law supports this interpretation.   See Thomas v. City of Jacksonville, No. 3:13-cv-737-J-32MCR, 2017 WL 3316478, *8 (M.D. Fla. Aug. 3, 2017) (agency's failure to dispose of a claim within ninety days is deemed a final denial of the claim); Skyles, 2017 WL 1322071 at *2-3 (statute of limitations is tolled for period of time taken by agency to deny claim, or ninety days if agency fails to make a final disposition of the claim); Cone, 2014 WL 1383028 at *3 (same).

In short, K.A.'s wrongful death claim accrued on March 19, 2015, and the limitations period began to run.   It was tolled beginning on January 23, 2017, for ninety days, at which point the City's failure to respond to Campbell resulted in a denial of her claim.   The limitations period then resumed on April 24, 2017, and expired on June 19, 2017. Campbell filed her legal action against the City on July 12, 2017.   See Complaint at 1. Therefore, the Florida wrongful death claim is due to be dismissed with prejudice as barred

by the statute of limitations.[7]

### b.  Counts II and III – § 1983 Claims Against Nobles and the City

### i.  Denomination of § 1983 Claims

As to both Counts II and III, Defendants assert the claims in these counts are due to be dismissed because Campbell has incorrectly labeled them as implicating K.A.'s substantive due process rights.   Motion at 12-13.   While the Court agrees that Campbell improperly denominated Counts II and III, her erroneous naming of these claims does not warrant dismissal.

Campbell titles Count II as "Deprivation of Life Without Substantive Due Process by Defendant Nobles."   Complaint at 6.   Likewise, she titles Count III as a claim of "Municipal Liability for Deprivation of Life Without Substantive Due Process."   Id. at 7.   Within each of these counts Campbell includes allegations consistent with claims based on a substantive due process violation.   See id. at ¶ 19 (Nobles' action "shockingly offends a universal sense of justice and conscience"); ¶ 24 (municipal policy, practices, and customs violated rights in a way that "shocks the conscience").   See also County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998) (articulating the shocks the conscience standard of review for substantive due process claims); Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007 (applying shocks the conscience standard of review for substantive due process claims).   However, within each count, Campbell also asserts that Nobles' and the City's actions are subject to liability "under 42 U.S.C. section 1983, as a violation of the Fourth and Fourteenth Amendments."   Complaint at ¶¶ 19, 24.

---

[7] In their Motion, Defendants assert a number of additional reasons that Count I should be dismissed.   See Motion at 5-11.   Because the Court has determined that Count I is due to be dismissed as barred by the statute of limitations, it is unnecessary to address Defendants' additional arguments.

The Supreme Court has unequivocally instructed that "all claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." Graham v. Connor, 490 U.S. 386, 395 (1989) (emphasis in original). Likewise, a "substantive due process analysis is inappropriate if a plaintiff's claim is covered by the Fourth Amendment." Hardy v. Town of Hayneville, 50 F.Supp.2d 1176, 1186 (M.D. Ala. 1999) (citing County of Sacramento, 523 U.S. at 843). See also Griffin v. Runyon, No. 5:04-CV-348 (DF), 2006 WL 1344818, *6 (M.D. Ga. May 16, 2006) (excessive force claim is properly analyzed under the Fourth Amendment). Moreover, the Court observes the well-established principle that the Federal Rules "do not countenance dismissal of a complaint for [an] imperfect statement of the legal theory supporting the claim asserted." See Johnson v. City of Shelby, Miss., 135 S. Ct. 346, 346 (2014); see also Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc., 673 Fed. Appx. 925, 927 (11th Cir. 2016). Indeed, "[a] complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." Sams v. United Food & Comm. Workers Int'l Union, AFL–CIO, CLC, 866 F.2d 1380, 1384 (11th Cir. 1989); see also Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 604 (5th Cir. 1981) ("The form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim."). See also Keene v. Prine, 477 Fed. Appx. 575, 584 (11th Cir. 2012);[8] Evans v. McClain of Ga., Inc., 131 F.3d 957,

---

[8] In citing to Keene, the Court notes that "[a]lthough an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see

964 n.2 (11th Cir. 1997); <u>Southern Pan Servs. Co. v. S.B. Ballard Const. Co.</u>, No. 3:07-cv-592-J-33TEM, 2008 WL 3200236, *4 (M.D. Fla. Aug. 6, 2008).

The facts alleged in Campbell's Complaint, however unartfully titled, focus on Nobles' alleged use of excessive and deadly force, and of the City's purported customs, policies, and practices instituting, supporting, and permitting the same. <u>See</u> Complaint, ¶¶ 11-12, 16. Similarly, subsumed in both Counts II and III, Campbell asserts that Nobles and the City violated K.A.'s Fourth Amendment rights. <u>Id.</u> at ¶¶ 19, 24. Notably, Defendants had no difficulty identifying that the factual basis of Campbell's claims are grounded in the Fourth Amendment and responding accordingly. <u>See</u> Motion at 14-15. Therefore, to the extent Defendants seek dismissal of Counts II and III on the basis of how Campbell named those counts in the Complaint, that request is due to be denied. The Court seeks to avoid turning pleading into "a game of skill in which one misstep by counsel may be decisive to the outcome." <u>Siedle v. Nat'l Ass'n of Sec. Dealers</u>, 248 F. Supp. 2d 1140, 1143 (M.D. Fla. 2002) (<u>quoting</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 48 (1957), <u>abrogated on other grounds by</u> <u>Bell Atlantic Corp.</u>, 550 U.S. 544, 562-63 (2007)). Accordingly, the Court will proceed to review the Defendants' substantive challenges to the sufficiency of Counts II and III of the Complaint.

### ii. Statute of Limitations

Defendants contend that both Counts II and III are barred by the applicable statute of limitations, and therefore are due to be dismissed. More specifically, they assert that Campbell's § 1983 claims should be subject to the same two-year limitations period which governs her Florida state law wrongful death claim, and therefore, her claims are untimely.

---

<u>generally</u> FED. R. APP. P. 32.1; 11TH CIR. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

Defendants are incorrect.

The law regarding the timeliness of claims under § 1983 is "[a] hodgepodge of state and federal law[.]"   <u>Mondragon v. Thompson</u>, 519 F.3d 1078, 1082 (10th Cir. 2008).   This is so because § 1983 does not itself contain a statute of limitations.   <u>Wilson v. Garcia</u>, 471 U.S. 261, 266 (1985).   In such circumstances, the Supreme Court has recognized that "[w]hen Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so," <u>id.</u> at 266-267, and 42 U.S.C. § 1988 codifies this approach.   <u>Id.</u>   Indeed, pursuant to 42 U.S.C. § 1988, courts are required to follow a three step process in determining the appropriate limitations period for a federal statute that is otherwise silent on the matter.   <u>Wilson</u>., 471 U.S. at 267.   First,

> courts are to look to the laws of the United States so far as such laws are suitable to carry [the civil and criminal civil rights statutes] into effect.   If no suitable federal rule exists, courts undertake the second step by considering application of state common law, as modified and changed by the constitution and statutes' of the forum state.   A third step asserts the predominance of the federal interest: courts are to apply state law only if it is not inconsistent with the Constitution and laws of the United States.

<u>Id.</u> (internal quotations and citations omitted).   Following this process, the <u>Wilson</u> Court determined that courts should apply the relevant state's personal injury statute of limitations to all § 1983 claims.   <u>Id.</u> at 275.

In <u>Owens v. Okure</u>, 488 U.S. 235 (1989), the Court noted that its decision in <u>Wilson</u> did not address the question of "what limitations period should apply to a § 1983 action where a State has one or more statutes of limitations for certain enumerated intentional torts, and a residual statute for all other personal injury actions."   <u>Id.</u> at 236.   As to that question, the <u>Owens</u> Court held "that where state law provides multiple statutes of

limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." Id. at 249-50. Together, Wilson and Owens guide that the statute of limitations for all § 1983 claims should be drawn from the relevant state personal injury statute of limitation, and where that state has several limitations periods for different types of personal injury claims, a court should select the state's general or residual limitations period for personal injury actions.

Applying this precedent to § 1983 claims arising in the state of Florida, as is the case here, the Eleventh Circuit has consistently found that Florida's residual four-year statute of limitations applies to a broad range of § 1983 claims. See e.g., McGinley v. Mauriello, 682 Fed. Appx. 868, 871 (11th Cir. 2017) (applying state residual four year limitations period in context of access to courts § 1983 claim); Ellison v. Lester, 275 Fed. Appx. 900, 901-02 (11th Cir. 2008) (applying state residual four-year limitations period in context of prisoner personal property § 1983 claim); City of Hialeah, Fla. v. Rojas, 311 F.3d 1096, 1103 (11th Cir. 2002) (applying state residual four-year limitations period in context of racially discriminatory hiring practices § 1983 claim); Burton v. City of Belle Glade, 178 F.3d 1175, 1188 (11th Cir. 1999) (applying state residual four-year limitations period in context of voting rights § 1983 claim). Additionally, federal district courts in Florida, when applying a statute of limitations to § 1983 wrongful death claims, have appropriately followed suit. See Fuston v. Florida, No. 2:12-cv-279-FtM-99DNF, 2013 WL 937575, *2 (M.D. Fla. Mar. 11, 2013); Estate of Bashimam v. City of Tallahassee, No. 4:10cv343-RH/WCS, 2011 WL 13232538, *2 (N.D. Fla. Mar. 11, 2011); Niesen v. Egger, No. 8:08-cv-1599-T-30EAJ, 2010 WL 1852036 (M.D. Fla. May 6, 2010).

Despite the foregoing precedent, Defendants assert that the state's two-year wrongful death limitations period, rather than the four-year residual period, should apply to Campbell's § 1983 claims arising from K.A.'s untimely death. In doing so, they attempt to distinguish Wilson and Owens by contending first that the wrongful death statute of limitations is more appropriate in this case, which alleges a wrongful death, than the state's general personal injury statute of limitations. Motion at 11. Second, Defendants contend that Owens' guidance does not apply here because that case dealt solely with "what limitations period should apply to a § 1983 action where a State has one or more statutes of limitations for certain enumerated intentional torts, and a residual statute for all other personal injury actions." Id. (citing Owens, 488 U.S. at 236. Defendants reason that because "Florida does not provide multiple statutes of limitations for certain enumerated intentional torts and a residual statute for all other personal injury actions," id. at 11-12, Owens' holding is inapposite. In making this argument, Defendants mischaracterize Florida's statute of limitations scheme which unquestionably provides specific statutes of limitation for certain intentional torts and a residual limitations period for all other claims. Compare FLA. STAT. ANN. §§ 95.11(3)(o) and (4)(d), (g) with § 95.11(3)(p). Moreover, they read Owens too narrowly and miss the broader context in which that decision was rendered.

Nothing in either Wilson or Owens suggests that courts should have the option to select a limitations period other than the state's sole or residual personal injury limitations period. Indeed, in Wilson and Owens, the Court intentionally sought to bring a measure of uniformity and consistency to the limitations periods applicable to § 1983 claims, rather than permitting courts to select different limitations periods for different types of § 1983

claims.  <u>Owens</u>, 488 U.S. at 248 (using a single residual limitations period allows potential § 1983 plaintiffs and defendants to "readily ascertain, with little risk of confusion or unpredictability, the applicable limitations period in advance of filing a § 1983 action); <u>Wilson</u>, 471 U.S. at 266 (rendering decision to eliminate the "conflict, confusion, and uncertainty concerning the appropriate statute of limitations to apply" to § 1983 actions). Defendants' arguments to the contrary call for a significant departure from the Court's guidance in <u>Wilson</u> and <u>Owens</u>, as well as Eleventh Circuit precedent applying Florida's four-year residual limitations period to a broad spectrum of § 1983 claims.  <u>See</u> <u>McGinley</u>, 682 Fed. Appx. at 871; <u>Ellison</u>, 275 Fed. Appx. at 901-02; <u>City of Hialeah, Fla.</u>, 311 F.3d at 1103; <u>Burton</u>, 178 F.3d at 1188.

Having considered the arguments of the parties, the Court concludes that Campbell's § 1983 claims arising from K.A.'s death are governed by Florida's residual four-year limitations period.  As noted earlier in this Order, K.A. died on March 19, 2015. Therefore, Campbell had four years from the date of K.A.'s death to bring her § 1983 claims against Nobles and the City.  She filed her action in July of 2017, slightly two years after her son's death.  As such, her § 1983 claims are timely.[9]

---

[9] The Court acknowledges that there exists a measure incongruence between the limitations period for Campbell's state law negligence wrongful death claim and her § 1983 claims.  While both claims are borne out of the same set of facts, Campbell's state law claim is barred by the state's two-year limitations period for wrongful death claims against state and municipal employees, <u>see</u> FLA. STAT. ANN. § 95.11(4)(d), 768.28(14), while her § 1983 claims against Nobles and the City are timely because she brought the claims within the state's four-year residual personal injury limitations period. <u>See</u> <u>id.</u> at § 95.11(3)(p).  The possibility of incongruent limitations periods for related state and federal claims was raised by Justice O'Connor in her dissent to the <u>Wilson</u> decision.  <u>See</u> <u>Wilson</u>, 471 U.S. at 280 (O'Connor, J., dissenting). There, she specifically noted that while the Court's decision might create uniformity within a given state for § 1983 claims, the <u>Wilson</u> decision did not eliminate the possibility that a § 1983 claim could have a different statute of limitations than that "provided by the state for common law or state statutory action on the identical set of facts."  <u>Id.</u> at 285-86 (internal citations and quotations omitted).  And indeed, this case highlights that very curiosity.  Nonetheless, when faced with similar arguments to select a limitations period other than that required by <u>Wilson</u> and <u>Owens</u>, courts have rejected such a position.  <u>See e.g.</u>, <u>King-White v. Humble Indep. Sch. Dist.</u>, 803 F.3d 754, 758-761 (5th Cir. 2015); <u>Blake v. Dickason</u>, 997 F.2d 749, 750-51 (10th Cir. 1993); <u>Szymanski v. Davidson</u>, No. 4:09-cv-062, 2011 WL 5593134, *5-6 (D.N.D. Nov. 17, 2011).

### iii.  Count II – § 1983 Wrongful Death Claim against Nobles

Turning to the substance of Campbell's claims, the Court addresses Defendants' challenges to Campbell's § 1983 claim against Nobles first.   In Count II Campbell asserts that when Nobles shot K.A., he violated K.A.'s Fourth and Fourteenth Amendment rights. Complaint at ¶¶ 18-22.   Nobles seeks dismissal of Count II arguing that Campbell has failed to allege a constitutional violation, Motion at 13-15, and in the alternative, that Nobles is entitled to qualified immunity.   Id. at 15-18.   Because the qualified immunity analysis necessarily requires the Court to consider whether Campbell's allegations are sufficient to state a claim for a constitutional violation, the Court will begin with Nobles' assertion that he is protected from suit by qualified immunity.

"[S]ection 1983 provides individuals with a federal remedy for the deprivation of rights, privileges, or immunities protected by the Constitution or the laws of the United States that are committed under color of state law."  Brown v. City of Huntsville, Ala., 608 F.3d 724, 733 n.12 (11th Cir. 2010) (citation omitted); see 42 U.S.C. § 1983.   Thus, to state a claim for relief under § 1983, a plaintiff must sufficiently allege that he or she was "'deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.'"   See Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1276-77 (11th Cir. 2003) (quotation omitted).

A defendant sued under § 1983 may raise the defense of qualified immunity.   Scott v. Harris, 550 U.S. 372, 375-76 (2007).   "Qualified immunity protects from civil liability government officials who perform discretionary functions if the conduct of the officials does not violate 'clearly established statutory or constitutional rights of which a reasonable

person would have known.'" Nolin v. Isbell, 207 F.3d 1253, 1255 (11th Cir. 2000) (quoting

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).   As a result, this defense protects from

suit "'all but the plainly incompetent or those who knowingly violate the law.'"[10]   Carr v.

Tatangelo, 338 F.3d 1259, 1266 (11th Cir. 2003) (quoting Malley v. Briggs, 475 U.S. 335,

341 (1986)).   Indeed, as "'government officials are not required to err on the side of

caution,' qualified immunity is appropriate in close cases where a reasonable officer could

have believed that his actions were lawful."   Lee v. Ferraro, 284 F.3d 1188, 1200 (11th

Cir. 2002) (quoting Marsh v. Butler Cnty., 268 F.3d 1014, 1031 n. 8 (11th Cir. 2001)).   In

order to be entitled to qualified immunity, Nobles must first establish that his conduct was

within the scope of his discretionary authority.[11]   See Webster v. Beary, 228 Fed. Appx.

844, 848 (11th Cir. 2007) (per curiam); Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir.

2002).

In this case, the parties do not dispute that the allegations in Campbell's Complaint

support a finding that Nobles, in pursuing K.A. on March 19, 2015, for potentially

possessing a stolen vehicle, was acting within his discretionary authority.   See Motion at

16; Response at 10.   As such, for the purpose of resolving the Motion, the Court finds that

Nobles has satisfied this threshold burden to invoke the protection of qualified immunity.

See Lee, 284 F.3d at 1194 (finding that "there can be no doubt that [the officer] was acting

---

[10] In determining whether a defendant is entitled to qualified immunity, the court views the facts and all reasonable inferences in the light most favorable to the plaintiff, to determine if the factual allegations in the complaint "support reasonable inferences that: (1) the Defendant Officers' respective conduct violated the Fourth Amendment; and (2) the illegality of such conduct was 'clearly established.'"   Scott v. City of Orlando, No. 6:15-cv-533-Orl-37TBS, 2015 WL 6688262, *3 (M.D. Fla. Oct. 30, 2015) (quoting and citing Epps v. Watson, 492 F.3d 1240, 1243 (11th Cir. 2007); Behrens v. Pelletier, 516 U.S. 299, 309 (1996)).

[11] "'A government official acts within [his] discretionary authority if the actions were (1) undertaken pursuant to the performance of [his] duties and (2) within the scope of [his] authority.'" Jones v. City of Atlanta, 192 Fed. Appx. 894, 897 (11th Cir. 2006) (per curiam) (quoting Lenz v. Winburn, 51 F.3d 1540, 1545 (11th Cir. 1995)).

in his discretionary capacity when he arrested [the plaintiff]," even though the plaintiff asserted that the officer used excessive force in the manner in which she was arrested).

The burden thus shifts to Campbell to demonstrate that qualified immunity is not appropriate, using the two-prong test established by the Supreme Court in <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). The first inquiry is, taken in the light most favorable to the non-moving party, "do the facts alleged show the officer's conduct violated a constitutional right?" <u>Id.</u>; <u>see</u> <u>also</u> <u>Beshers v. Harrison</u>, 495 F.3d 1260, 1265 (11th Cir. 2007) (<u>quoting</u> <u>Scott</u>, 550 U.S. at 377).   If the court finds that a violation of a constitutional right has been alleged based on the plaintiff's version of the facts, then the next question is whether the right was clearly established at the time of the violation.[12] <u>Saucier</u>, 533 U.S. at 201; <u>Scott</u>, 550 U.S. at 377; <u>Lee</u>, 284 F.3d at 1194. The court must undertake this second inquiry "in light of the specific context of the case, not as a broad general proposition."  <u>Saucier</u>, 533 U.S. at 201.

The Court will turn first to the question of whether Campbell's allegations are sufficient to state a plausible claim that Nobles violated K.A.'s Fourth Amendment rights. The Fourth Amendment "guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures.'"  <u>Graham</u>, 490 U.S. at 394.   Consequently, the amendment "provides the right to be free from the use of excessive force in the course of an investigatory stop or other seizure of the person."  <u>Beshers v. Harrison</u>, 495 F.3d 1260, 1265 (11th Cir. 2007) (internal quotations marks omitted); <u>Mercado v. City of Orlando</u>, 407 F.3d 1152, 1156-57 (11th Cir. 2005).   There is no dispute that Nobles' actions in shooting

---

[12] In <u>Pearson v. Callahan</u>, 555 U.S. 223 (2009), the Supreme Court modified the procedure mandated in <u>Saucier</u> permitting trial judges the discretion to determine which prong of the qualified immunity analysis should be resolved first.  <u>See</u> <u>Pearson</u>, 555 U.S. at 236.

K.A. resulted in a seizure under the Fourth Amendment.  See Scott v. Harris, 550 U.S. 372, 381 (2007); Tennessee v. Garner, 471 U.S. 1, 7 (1985).  However, not every seizure results in liability under § 1983; "the seizure must be unreasonable."  Beshers, 495 F.3d at 1266.  Therefore, the initial inquiry turns on whether Nobles' actions were objectively reasonable.  See Scott, 550 U.S. at 381; Graham, 490 U.S. at 397; Beshers, 495 F.3d at 1263 n.4 & 1266; Mercado, 407 F.3d at 1157 ("In determining whether the officers' force was reasonable, [the court] must determine 'whether a reasonable officer would believe that this level of force is necessary in the situation at hand.'").

In evaluating the reasonableness of a seizure, the Court must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."  Garner, 471 U.S. at 8 (internal quotation marks omitted); see also Scott, 550 U.S. at 383-84; Graham, 490 U.S. at 396.  This is a key principle underlying the Fourth Amendment.  See Garner, 471 U.S. at 8.  In balancing the interests, such as the individual's interest in his own life and the effectiveness of law enforcement, it is plain that, regardless of the existence of probable cause to seize an individual, "an officer may not always [effect a seizure] by killing the person."  Id. at 9.  Thus, in establishing an outside boundary for reasonableness of the use of deadly force in the case of a fleeing felon, the United States Supreme Court found that such force may not be used, as a matter of course, to seize nondangerous, fleeing felons when those felons pose no immediate threat to the officer or others.  See id. at 11.

On the other hand, if "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not

constitutionally unreasonable to prevent escape by using deadly force." Id.; see also Pace v. Capobianco, 283 F.3d 1275, 1281 (11th Cir. 2002). Indeed, the Supreme Court has specifically concluded that an officer may use deadly force when: (1) "the suspect threatens the officer with a weapon" or "there is a probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm"; (2) the force is necessary to prevent escape; and (3) a warning has been given, if feasible. Garner, 471 U.S. at 11-12; see also Pace, 283 F.3d at 1281.

Nevertheless, although the Garner Court identified several factors that may be considered when determining whether an officer's use of deadly force was lawful, see Beshers, 495 F.3d at 1267, the Supreme Court has cautioned that these factors are not to be applied rigidly or in every case involving deadly force. See Scott, 550 U.S. at 382 (opining that "Garner did not establish a magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute 'deadly force'"). Regardless of the factors considered in determining whether deadly force was appropriate, the operative inquiry is whether, upon consideration of the totality of the circumstances, the officer acted reasonably. See Scott, 550 U.S. at 383-384; Garrett v. Athens-Clarke County, Ga., 378 F.3d 1274, 1279 (11th Cir. 2004). Indeed, the Supreme Court has eschewed easy-to-apply legal tests in favor of "slosh[ing] . . . through the fact-bound morass of 'reasonableness.'" Scott, 550 U.S. at 383; see also Graham, 490 U.S. at 396 (recognizing that "the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application" (internal quotation marks omitted)).

Here, the Court must determine whether Campbell's complaint sufficiently alleges that Nobles acted in a constitutionally unreasonable manner when he shot K.A., an

unarmed fleeing suspect, in the back of the head. At this point in the proceedings, drawing all reasonable inferences in favor of Campbell, as the Court must, <u>Omar ex. rel. Cannon v. Lindsey</u>, 334 F.3d 1246, 1247 (11th Cir. 2003), the Court determines Campbell has alleged facts sufficient to support a plausible claim that Nobles violated K.A.'s constitutional rights.

In her Complaint, Campbell alleges that Nobles encountered K.A. in the course of responding to a report of a stolen vehicle. Complaint at ¶ 8. After identifying the stolen vehicle and awaiting backup, Nobles observed two individuals, one of whom was the sixteen year old K.A., <u>id</u>. at ¶ 4, enter the vehicle and drive away. <u>Id</u>. at ¶ 9. Nobles briefly pursued the vehicle with his siren and lights activated, but after the vehicle crashed into bushes, its occupants fled on foot. <u>Id</u>. at ¶ 10. At that point, Nobles "exited his patrol vehicle, and drew his weapon." <u>Id.</u> He determined that K.A. had a weapon in his hands, fired two shots at him, and pursued K.A. on foot. <u>Id</u>. K.A. then discarded the weapon he was carrying, fled a short distance, and crouched behind a parked vehicle. <u>Id</u>. at ¶ 11. Nobles continued his pursuit. As Nobles approached him, K.A. "stood and turned to flee at which time . . . Nobles [] fired two shots, striking . . . [him] in the back of the head." <u>Id</u>. K.A. died from his wounds. <u>Id</u>. at ¶ 12.

Given the limited facts as they are currently presented in Campbell's Complaint, the Court cannot find as a matter of law that Nobles' actions were objectively reasonable. Without resorting to a formulaic application of the factors suggested by the Supreme Court in <u>Garner</u>, one cannot ignore that the facts presented by Campbell's allegations fall well short of the indicia of reasonableness laid out by the Court regarding an officer's use of deadly force. For example, there is no allegation that K.A. threatened Nobles, that he

posed a threat to others, or that Nobles had probable cause to believe that K.A. had "committed a crime involving the infliction or threatened infliction of serious physical harm." Garner, 471 U.S. at 11-12. Moreover, from Campbell's allegations, the Court cannot infer that Nobles gave K.A. any warning. Finally, Campbell asserts that at the time Nobles shot K.A., the teenager was unarmed. Id. at ¶ 11.

The Supreme Court has recognized that the police "may not seize an unarmed non-dangerous suspect by shooting him dead." Garner, 471 U.S. at 11. Here, viewing the facts as alleged by Campbell in the light most favorable to her, Campbell has stated a plausible claim, that Nobles shot a fleeing unarmed non-threatening suspect in the back of the head to stop that suspect's escape. These allegations state a plausible claim of a constitutional violation. This is not to say that Campbell has stated a winning claim, only that she has stated a plausible claim sufficient to survive dismissal.

Nobles' arguments to the contrary are limited and conclusory. Nobles broadly contends that Campbell's allegations "most plausibly show[] that Sgt. Nobles acted lawfully in pursuit of an armed fleeing felon and that [K.A.'s] own actions and decisions were the cause of his injuries. At most, the allegations describe a mistake . . . , which is not a Fourth Amendment violation." Motion at 15. In making this argument, Nobles misconstrues the Court's inquiry at the motion to dismiss stage. The question is not what a plaintiff's allegations "most plausibly show," it is whether a plaintiff's factual allegations state a claim that is plausible. "The allegations must be plausible, but plausibility is not probability." Lane v. Philbin, 835 F.3d 1302, 1305 (11th Cir. 2016) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2016)). Moreover, in arguing that at most, Nobles was merely mistaken, Nobles invites the Court to view the facts in the light most favorable to him.

However, in determining whether Campbell has stated a claim that Nobles violated K.A.'s constitutional right, the Court must view the facts in the light most favorable to the plaintiff, not Nobles.   See Saucier, 533 U.S. at 201.   Doing so, the Court finds that Campbell has pled sufficient facts to plausibly assert that Nobles violated a constitutional right. Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004) (citing Saucier, 533 U.S. at 201).   Thus, to the extent that Defendants seek dismissal of Count I for failure to state a claim for a constitutional violation, the Motion is due to be denied.   Moreover, for purposes of overcoming Nobles' request for dismissal on qualified immunity grounds, Campbell has satisfied the first Saucier prong.

Having determined that Campbell has pled a plausible claim that Nobles violated K.A.'s constitutional rights, the Court must now consider whether the right was clearly established at the time of the incident.   Id.   The Supreme Court has instructed that in order

> [f]or a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."

Hope v. Pelzer, 536 U.S. 730, 739 (2002) (citation omitted) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).   For purposes of this analysis the critical question is whether the state of the law gave the government actor "fair warning" that his alleged treatment of the plaintiff was unconstitutional.   Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (quoting Hope, 536 U.S. at 741); see also Marsh, 268 F.3d at 1031 ("[F]air and clear notice to government officials is the cornerstone of qualified immunity.").   The Eleventh Circuit recognizes three sources of law that would provide a government official

adequate notice of statutory or constitutional rights: "specific statutory or constitutional provisions; principles of law enunciated in relevant decisions; and factually similar cases already decided by state and federal courts in the relevant jurisdiction." Goebert v. Lee County, 510 F.3d 1312, 1330 (11th Cir. 2007). Thus, where the words of the federal statute or federal constitutional provision are specific enough "to establish clearly the law applicable to particular conduct and circumstances," then the plaintiff can overcome the qualified immunity privilege, even in the absence of case law. Vinyard, 311 F.3d at 1350. In this type of "obvious clarity" case "the words of the federal statute or federal constitutional provision may be so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful." Id.

Alternatively, where the conduct alleged is not so egregious as to violate a statutory or constitutional right on its face, courts look to case law to determine whether the law is "clearly established." Id. at 1351. If the case law contains "some broad statements of principle" which are "not tied to particularized facts," then it may be sufficient to clearly establish the law applicable in the future to different facts. Id. However, to provide officials with sufficient warning, the case law must establish a principle such that "every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." Id. Last, in the absence of broad statements of principle, precedent can clearly establish the applicable law where "the circumstances facing a government official are not fairly distinguishable, that is, are materially similar," to the particularized facts of prior case law. Id. at 1352. See also Gates v. Khokhar, No. 16-15118, 2018 WL 1277395, *3 (11th Cir. March 13, 2018). Such precedent must be found in decisions from the Supreme Court, the controlling circuit court

of appeals, or the pertinent state supreme court.  Id. at 1351. However, a case "on all fours" with materially identical facts is not required to establish "fair warning" to government officials.  Holloman v. Harland, 370 F.3d 1252, 1277 (11th Cir. 2004) (discussing the impact of Hope on Eleventh Circuit precedent).

Here, Nobles invokes the "principle that clearly established law should not be defined at a high level of generality but instead must be particularized to the facts of the case."  Motion at 17 (citing White v. Pauly, 137 S.Ct. 548, 552 (2017)).  He goes on to contend that "no case law from the Supreme Court, the U.S. Court of Appeals for the Eleventh Circuit, or the Florida Supreme Court provided Nobles with fair notice that the conduct alleged in the complaint violated a constitutional right under these particular circumstances."  Id. at 17-18.  Nobles is incorrect.

In Garner, the Supreme Court stated that "[t]he use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. . . .   A police officer may not seize an unarmed, non-dangerous suspect by shooting him dead."  Garner, 471 U.S. at 11.  On the other hand, if the suspect "threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given."  Id. at 11-12.  See also Brosseau v. Haugen, 543 U.S. 194, 197-98 (2004).

The particular facts of Garner are important to the analysis here.  In Garner, an officer responded to a "prowler inside call" and was informed by a nearby resident that someone had entered a neighboring property and was still inside.  Garner, 471 U.S. at 3. The officer then observed an individual fleeing from the back of the home, who then

stopped at a 6-foot-high fence at the edge of the property's yard.  Id.  The officer was able to see the fleeing suspect's face and hands and saw no sign of a weapon.  Id.  The officer called out "police, halt," but the suspect began to climb over the fence.  Id. at 4. "Convinced that if [the suspect] made it over the fence he would elude capture, [the officer] shot him."  Id.  The suspect, who was 15 years old, died from a gun shot in the back of his head.  Id.  On these facts, the Court determined that the state statute allowing the officer to use deadly force under those circumstances was constitutionally impermissible. Id. at 22.

While the Supreme Court has recognized that "Garner and Graham do not by themselves create clearly established law outside an 'obvious case,'" White, 137 S.Ct. at 552, at this stage of the proceedings, the similarities between the instant case and Garner are significant enough to support a conclusion that a reasonable officer would have had fair warning that his actions violated an established constitutional right.  See Hope, 536 U.S. at 739-740.  See also Holloman, 370 F.3d at 1277 (noting that a case "on all fours" with materially identical facts is not required for the "clearly established" prong of a qualified immunity analysis).  Here, as in Garner, Campbell alleges that Nobles, without warning, shot a fleeing, unarmed teenaged suspect who posed no immediate threat to him or others. Notably, Garner was decided nearly thirty years before Nobles' interaction with K.A., and since Garner, the Eleventh Circuit has affirmed that an officer's use of deadly force is constitutionally unreasonable under similar circumstances.  See e.g., Lundgren v. McDaniel, 814 F.2d 600, 603 (11th Cir. 1987) (affirming jury verdict in favor of plaintiff where evidence in support of verdict indicated that officers "were neither threatened by a weapon, nor appeared to be threatened by a weapon, nor were fired upon, but rather that

the officers without provocation shot at a nondangerous suspect"); Pruitt v. City of Montgomery, Alabama, 771 F.2d 1475, 1483-84 (11th Cir. 1985) (officer's actions were unreasonable where he did not fear his safety in the context of shooting a fleeing felony suspect). Accordingly, based on the law in existence at the time Nobles shot K.A., the Court determines that it was clearly established that Nobles' actions, as described by, and viewed in the light most favorable to Campbell, would have been constitutionally unreasonable. Therefore, Nobles is not entitled to qualified immunity at the Motion to Dismiss stage of the proceedings, and hence Campbell's § 1983 wrongful death claim against him is not due to be dismissed.[13]

### iv. Count III – Municipal Liability Claim Against Williams, in His Official Capacity as Sheriff for the City of Jacksonville, and the City

In addition to her claim against Nobles, Campbell asserts that Williams, in his official capacity as Sheriff for the City of Jacksonville, "instituted customs, policies, and/or practices" that were the direct and proximate result of K.A.'s alleged unconstitutional deprivation of life. Complaint at ¶¶ 24, 28. Campbell further asserts that Williams, through his failure to "adequately discipline his officers for their actions and inactions . . . ratified the officers' decisions and their reasons for those decisions, thus constituting a custom, practice, and/or policy." Id. at ¶ 25. She also claims that Williams "failed to adequately train his agents and employees with respect to the use of deadly force in

---

[13] In so ruling, the Court notes that its decision in this Order does not preclude Nobles from reasserting his qualified immunity defense later in this action as the facts of the case become more developed. See Oladeinde v. City of Birmingham, 230 F.3d 1275, 1285 (11th Cir. 2000) ("We stress, however, that defendants retain the right to assert the qualified-immunity defense at the next stage of the proceedings (and, for that matter, throughout the proceedings) as more facts are developed.") (citation omitted).

pursuit of fleeing and unarmed suspects, particular African American male[] suspects, despite a clear and obvious need for such training reflected in the clear pattern of unconstitutional officer shootings." Id. at ¶ 27. Finally, Campbell claims that in the alternative, Nobles, in the act of seizing and killing K.A., "was the final policy maker for . . . Williams as [Nobles'] decisions were not immediately or effectively reviewable." Id. at ¶ 26. In seeking to dismiss this claim, Defendants assert that Campbell's Complaint "fails to identify with any factual specificity any municipal custom, policy or practice that existed and caused any violation of [K.A.'s] constitutional rights." Motion at 19. Defendants also contend that Campbell failed to sufficiently allege how Williams failed to train or discipline his officers, or how Williams ratified Nobles' actions. Id. at 19-20.

The Supreme Court of the United States has soundly rejected the theory of respondeat superior as a basis for municipal liability in § 1983 actions. See Monell v. Dept. of Soc. Servs. of City of New York, 436 U.S. 658 (1978). Instead, a municipality may be liable in a § 1983 action "only where the municipality itself causes the constitutional violation at issue." Cook ex. rel. Estate of Tessier v. Sheriff of Monroe County, 402 F.3d 1092, 1115 (11th Cir. 2005) (citations omitted). Thus, a plaintiff must establish that an official policy or custom of the municipality was the "moving force" behind the alleged constitutional deprivation. See Monell, 436 U.S. at 693–94. "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted). The policy requirement is designed to "'distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is

actually responsible.'" Grech v. Clayton County, 335 F.3d 1326, 1329 n.5 (11th Cir. 2003) (en banc) (quotation omitted). Indeed, municipal liability arises under § 1983 only where "'a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." City of Canton v. Harris, 489 U.S. 378, 389 (1989) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 483–84 (1986)). A municipality will rarely have an officially-adopted policy that permits a particular constitutional violation, therefore, in order to state a cause of action for damages under § 1983, most plaintiffs must demonstrate that the municipality has a custom or practice of permitting the violation. See Grech, 335 F.3d at 1330; McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). The Eleventh Circuit has defined "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and wide-spread practice." Sewell, 117 F.3d at 489.

Similarly, in some circumstances, "the failure to provide proper training may fairly be said to represent a policy for which [the city] may be held liable if it actually causes injury." City of Canton, 489 U.S. at 390. Failure to train can lead to municipal liability "only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants [such that the failure to train] can be properly thought of as a city 'policy or custom' that is actionable under § 1983." Id. at 388–89 (alteration added). Thus, in order to assert such a claim, a plaintiff must "present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998). As a supervisor will rarely have an express written or oral policy of inadequately training or supervising his or her employees, a supervisor's failure to train and/or supervise his or her employees amounts to an

actionable policy under § 1983 where the plaintiff demonstrates that the supervisor's failure to train and/or supervise amounts to deliberate indifference to the rights of citizens with whom the supervisor's employees come into contact.  See Gold, 151 F.3d at 1350; see also Battiste v. Sheriff of Broward Cnty., 261 Fed. Appx. 199, 202 (11th Cir. 2008) (per curiam) ("A supervisory official is liable under § 1983 when 'his failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact; and the failure has actually caused the injury of which the plaintiff complains.'" (quoting Belcher v. City of Foley, Ala., 30 F.3d 1390, 1397 (11th Cir. 1994))).  Notably, the Eleventh Circuit has repeatedly held that "without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train or supervise."  Id. at 1351.  Indeed, "the need for such training must be plainly obvious to [City] decisionmakers," such as where there is "evidence of a history of widespread prior abuse."  Wright v. Sheppard, 919 F.2d 665, 674 (11th Cir. 1990) (alteration added); see also Rocker v. City of Ocala, Fla., 355 Fed. Appx. 312, 314 (11th Cir. 2009) (per curiam).

Finally, a municipality may be liable "on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority."  Hoefling v. City of Miami, 811 F.3d 1271, 1279 (11th Cir. 2016) (citing Matthews v. Columbia County, 294 F.3d 1294, 1297 (11th Cir. 2002)).  In this context, the "final policymaker, however, must ratify not only the decision itself, but also the unconstitutional basis for it."  Matthews, 294 F.3d at 1297-98 (internal quotations and citations omitted).  As implicated in this case, the Eleventh Circuit has also suggested that a City's "persistent failure to take disciplinary action against officers can give rise to the inference that a municipality ratified conduct,

thereby establishing a 'custom' within the meaning of <u>Monell</u>." <u>Fundiller v. City of Cooper City</u>, 777 F.2d 1436, 1443 (11th Cir. 1985); <u>see also</u> <u>Rivas v. Figueroa</u>, No. 11–23195–Civ., 2012 WL 1378161, *3 (S.D. Fla. Apr. 20, 2012) ("A municipality may be liable for violating Section 1983 even where the municipality provides rules and regulations for the operation of its police department, if those rules were repeatedly violated and the municipality failed to rectify the situation) (<u>citing</u> <u>Depew v. City of St. Marys</u>, 787 F.2d 1496, 1499 (11th Cir.1986)).

Campbell's assertions in support of her municipal liability claims are nothing more than broad conclusory statements devoid of any factual support. She recites that the City "failed to properly train . . . Nobles in the use of deadly force," Complaint at ¶ 16.e.; "failed to properly supervise . . . Nobles in the use of deadly force," <u>id.</u> at ¶ 16.f.; and also failed to properly discipline . . . Nobles after multiple improper prior uses of deadly and/or excessive force." <u>Id.</u> at ¶ 16.g. She also asserts that the City "failed to follow an early warning protocol which, if followed, would have resulted in additional evaluation and training of" Nobles, <u>id.</u> at ¶ 16.h, and "failed to take appropriate corrective measures to prevent unjustified officer shootings of suspects in light of the documented history within the Jacksonville Sheriff's office of such unjustified shooting carried out by officers, particularly shooting involved unarmed, African-American male suspects." <u>Id.</u> at ¶ 16.i. However, nothing within this litany of conclusory allegations identifies any facts suggesting how the City's training, supervision, or discipline of Nobles was deficient, or how that allegedly lacking oversight proximately caused K.A.'s constitutional injuries and death. Rather, Campbell attempts to extrapolate out of the single instance of Nobles' alleged misconduct, a municipal policy, custom, and practice.

A custom, however, cannot be derived from a single incident of officer wrongdoing. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 821-822 (1985); see also Grech, 335 F.3d at 1330 n.6 (11th Cir. 2003) (noting that "a single incident would not be so pervasive as to become a custom or practice"). As the Eleventh Circuit has explained,

> [a] single incident would not be so pervasive as to be a custom, because a custom must be such a longstanding and widespread practice [that it] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it. This requirement of proof prevents the imposition of liability based upon an isolated incident, and ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.

Craig v. Floyd County, Ga., 643 F.3d 1306, 1310 (11th Cir. 2011) (internal citations and quotations omitted). Nevertheless, the Court notes that the Supreme Court, in dictum, has left open the possibility that "a need to train could be 'so obvious,'" that a city could be held liable even without a pattern of prior constitutional violations. See Gold, 151 F.3d at 1352 (citing City of Canton, 489 U.S. at 390). The Supreme Court offered the example of the need to train officers in the use of deadly force where the officers are provided firearms. City of Canton, 489 U.S. at 390 n.10. However, Campbell does not even assert that the City failed to provide any training on the use of deadly force. Instead, she acknowledges that the City did have a deadly force policy and a firearms policy, Complaint at ¶ 16a.i-ii, but contends that Nobles failed to comply with those policies. Id. These allegations are insufficient to fall within the narrow exception arguably left open in City of Canton for cases involving only a single incident of misconduct.

Likewise, Campbell provides no facts to support her conclusory suggestion that Nobles may have improperly used deadly and/or excessive force in the past. Complaint at ¶ 16.g. Also, she does not provide the Court with anything more than a broad

suggestion that the City had an "early warning protocol" system that it nonetheless failed to use, id. at ¶ 16.h., nor does she provide any facts supporting an alleged "documented history" and "clear pattern of unconstitutional officer shootings" by the City of "unarmed, African-American male suspects."  Id. at ¶¶ 16h.i, 27.  Finally, while Campbell generally asserts that the City's failings represent a municipal policy, custom, and practice, id. at ¶¶ 24, 25, 27, she pleads no facts suggesting how these broad alleged failures actually constitute municipal policy, custom or practice.  As the Supreme Court instructs, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555); see also Sada v. City of Altamonte Springs, No. 6:09-cv-506-Orl-31KRS, 2009 WL 3241984, *3 (M.D. Fla. Oct. 5, 2009) ("Such a mechanical recitation of the elements of a deliberate indifference claim is insufficient to survive a motion to dismiss.").

In short, Campbell fails to identify any actual City policies, and in describing only the single incident of deadly force involving K.A., fails to offer any facts to support the existence of a widespread custom.  See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570; see also Harvey v. City of Stuart, 296 Fed. Appx. 824, 826 (11th Cir. 2008) (affirming dismissal of § 1983 action against municipality because the plaintiff "failed to identify any policy or custom that caused a constitutional violation, and his vague and conclusory allegations were insufficient to support the complaint."); Reyes v. City of Miami Beach, No. 07-22680-CIV, 2007 WL 4199606, at *6 (S.D. Fla. Nov. 26, 2007) (recognizing that although there is no heightened pleading standard for § 1983 claims against municipalities, plaintiffs must nevertheless satisfy Twombly's generally applicable basic pleading

standard, and holding dismissal warranted because "[i]n recounting only their own alleged incident, offering no other facts to support their claim that the City had an official policy or widespread custom that was directly responsible for their injuries, and failing to identify even one responsible final City policymaker, Plaintiffs have failed to raise their section 1983 claim against the City above the speculative level.").[14]  Accordingly, Count III is due to be dismissed with prejudice.[15]

In light of the foregoing, it is

**ORDERED**:

1. Defendants, City of Jacksonville, Mike Williams, in his Official Capacity as Sheriff of the Consolidated City of Jacksonville and Duval County, and J.C. Nobles' Motion to Dismiss (Doc. 5), is **GRANTED** in part, and **DENIED** in part;

    a. The claims against the City in Count I, are **DISMISSED with prejudice;**

    b. The claims against the City and Mike Williams in Count III are **DISMISSED with prejudice;**

    c. In all other respects, Defendants' requests are **DENIED.**

---

[14] The Court also rejects Campbell's alternative position that Nobles, in the specific instance when he shot and killed K.A., should be deemed a "final policy maker for . . . Williams as [Nobles'] decisions were not immediately or effectively reviewable." Id. at ¶ 26.  The argument that an officer of Nobles' rank is a "final policy maker for the City is implausible on its face." Irons v. City of Holly Hill, No. 6:16-cv-479-Orl-31GJK, 2016 WL 4810721, *5 (M.D. Fla. Sept. 14, 2016) (citing Iqbal, 556 U.S. at 678).  While Nobles certainly made decisions in the course of seizing and shooting K.A., "it cannot be inferred that his actions 'may fairly be said to represent official [municipal] policy.'" Id. (quoting Monell, 436 U.S. at 694).

[15] Although there is some tension among the cases, the Court's application of Iqbal and Twombly does not run afoul of the Supreme Court's decision in Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993), which holds merely that courts may not apply a heightened pleading standard to § 1983 actions against municipalities, that is, "a more demanding rule for pleading a complaint under § 1983 than for pleading other kinds of claims for relief." See Leatherman, 507 U.S. at 168.  Here, the Court has not applied a heightened pleading standard, but rather the generally applicable pleading requirements that a complaint, stripped of bare labels and legal conclusions, plead enough factual material "to state a claim that is plausible on its face[,]" that is, to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570.

2. Defendants shall respond to Plaintiff Deneane Campbell's Complaint (Doc. 2) in accordance with the requirements of Rule 12 of the Federal Rules of Civil Procedure.

3. The parties are directed to conduct a case management conference and file a case management report no later than **April 12, 2018**.

**DONE AND ORDERED** in Jacksonville, Florida this 23rd day of March, 2018.

MARCIA MORALES HOWARD
United States District Judge

lc26

Copies to:

Counsel of Record